BURRIDGE *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—STREETS—BOULEVARD COMMISSION.
   That the control of a city boulevard is placed by legislative
   enactment in the hands of a commission appointed by the
   mayor with the approval of the council, rather than in the
   council itself, renders it none the less a city enterprise.

2. SAME—DEFECTIVE SIDEWALKS—LIABILITY FOR INJURY.
   The Detroit boulevard is a "street" or "highway," within the
   meaning of 3 How. Stat. § 1446c *et seq.,* fixing the liability of
   municipalities for injuries received upon any public highway
   or street by reason of defective sidewalks.

Error to Wayne; Carpenter, J. Submitted June 15,
1898. Decided July 12, 1898.

Case by Elizabeth Burridge against the city of Detroit
for personal injuries caused by a defective sidewalk.
From a judgment for defendant on verdict directed by
the court, plaintiff brings error. Reversed.

*E. H. Sellers* (*Cassius Hollenbeck,* of counsel), for
appellant.

*C. D. Joslyn,* for appellee.

MONTGOMERY, J. As the record shows, the sole ques-
tion in this case is whether the city of Detroit is liable to
respond to a person injured by reason of a defective side-
walk on the boulevard. The learned circuit judge was of
the opinion that no such liability exists, and stated his
reasons therefor in his charge, from which we quote. Re-
ferring to Act No. 264, Pub. Acts 1887 (3 How. Stat. §
1446c *et seq.*), fixing liability of municipalities for defects
in ways, including sidewalks, he said:

"It seems to me very clear that this law applies to
public highways where the city or the village or the town-

ship has control over them, and has neglected to do what it should have done to put them in proper condition for public travel. Now, let us see whether or not the boulevard of the city of Detroit is, according to the spirit of this act, and according to the letter of this act, a public highway. The boulevard of the city of Detroit was under the control of officials appointed by the township and by the city, because at that time, when it was first laid out, it was partly outside of the limits of the city; and that act contained an express provision that the municipal corporations concerned should not be responsible for the neglect of these commissioners, so that, if the act stated now as it did then, there could be no question. But in 1889 that law was changed, because in the meantime the boulevard had been entirely taken in the city, and it was the opinion of the legislature that some other body than the body then in existence should take care of it. By that act a park and boulevard commission was created, to be appointed by the mayor, and whose appointments were approved by the council. Now, that act gives to those commissioners the control of these boulevards, or this boulevard, as well as the parks. It gives this commission the power to make rules and regulations as to the sidewalks, and as to their width and location, and power to prescribe the material of and manner in which they shall be constructed. In other words, these commissioners have vested in them by this act the power to determine what kind of sidewalks shall be made, and the power to determine when those sidewalks shall be repaired; *so that the city has not any direct authority over* the making of sidewalks in the first instance, *or over their repairs* subsequently. Neither has the city reserved to it by this act any power of exercising any direct supervision over these walks. The park and boulevard commission has just as much authority within its proper jurisdiction as has the common council, so that the city of Detroit has no right of its own volition to in any wise control these sidewalks. In other words, we cannot suppose that the legislature intended to make the city of Detroit responsible for the care of something *when it has not the power to remedy it*, and that would be the effect of extending this law to it. Of course, it may be said that equitably there would be just as much reason for it. Perhaps that is true."

We think the circuit judge was at fault in his premises. In 1889, by an act entitled "An act supplemental to the

charter of the city of Detroit," etc., the control of the boulevard was placed in the hands of the commissioners of parks and boulevards.   Act No. 388, Local Acts 1889. This was a city agency, and it is error to assume that because the control of the boulevard was vested in such a body, rather than the common council, the enterprise was any the less a city enterprise.   The city may act through such agencies as the legislature directs.   *People* v. *Hurlbut*, 24 Mich. 69 (9 Am. Rep. 103); *Turner* v. *City of Detroit*, 104 Mich. 326; *Robinson* v. *City of Detroit*, 107 Mich. 168; *Barnes* v. *District of Columbia*, 91 U. S. 540.

Was the boulevard a "street" or "highway," within the meaning of this act?   At the point where plaintiff received her injuries, it is about 150 feet in width, about 60 feet of which is graded.   The remainder of the space is occupied by grass plots and sidewalks.   At the time of the injury in question, the graded portion was open to travel without distinction.   Since that time heavy teaming over this way has been prohibited.   It is worthy of note that in 1893 the legislature added a section to the "Boulevard Act," so called, in which it was provided that, in case of a recovery against the city because of the dangerous condition of a sidewalk, a recovery might, under certain conditions, be had against the abutting owner.   Act No. 415, Local Acts 1893.   While the circuit judge justly observes that the fact that the legislators thought the law was in a certain condition does not make the law that way, unless as a matter of fact they were correct in the views they held, yet a legislative construction of previous legislation is entitled to more or less weight with the judiciary; and in this case we are inclined to adopt the same view that the legislature apparently entertained.   Certainly, this boulevard had all the characteristics of a highway.   It furnished all the conveniences of a street to the traveling public which an ordinary street offered, and it was equally inviting to the public.   The fact that more than the usual space was devoted to lawn on either side

distinguished it from the ordinary street only in degree. While no cases are cited distinctly covering this question, we think the boulevard falls within the general description of a street or highway. Elliott, Roads & S. 1, 13. It has generally been referred to by this court as a street. *Commissioners, etc.,* v. *Detroit, etc., R. Co.,* 93 Mich. 59; *Same* v. *Chicago, etc., R. Co.,* 91 Mich. 292.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.