## Ankenbrand *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Philadelphia—Fairmount Park—Defective sidewalk in park—Acts of February 2, 1854, P. L. 21, March 26, 1867, P. L. 547, April 14, 1868, P. L. 1083, and March 16, 1870, P. L. 451.*

1. A municipal corporation having the power and subject to the duty to maintain the highways within it, is chargeable with the consequences of the presence of an actual and unlawful obstruction or negligent defect in that portion of a highway within its limits, which the general public is invited to travel, at least as soon as it can be said to have knowledge of the obstruction or defect.  The mere fact that the highway is within or passes through an uninclosed public park does not change the rule.

2. The Acts of February 2, 1854, P. L. 21, March 26, 1867, P. L. 547, April 14, 1868, P. L. 1083, and March 16, 1870, P. L. 451, relating to

Fairmount Park in the city of Philadelphia, do not constitute the commissioners of Fairmount Park a body corporate, municipal, quasi municipal or private, or vest in that body as a separate distinct corporate entity, dominion over the park and the highways therein to the exclusion of the city. The fact that the city does not appoint the commissioners is immaterial as fixing its liability for their negligence in leaving a footway in the park in a defective condition to the injury of a person walking upon it.

Argued Oct. 16, 1912. Appeals, Nos. 95 and 96, Oct. T., 1912, by defendant, from judgment of C. P., No. 3, Phila. Co., Sept. T., 1909, No. 375, on verdict for plaintiff in case of Frank Ankenbrand and Catharine Ankenbrand, his wife, v. City of Philadelphia. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries sustained by a fall in a hole in a footway bordering on Fairmount Park in the city of Philadelphia.

The case turned on whether the city could be held liable for the negligence of the park commissioners in not keeping the footway in a safe condition.

Verdict and judgment for Frank Ankenbrand for $378. and for Catharine Ankenbrand for $500. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*W. C. Wilson,* assistant city solicitor, with him *D. J. Callaghan,* assistant city solicitor, and *Michael J. Ryan,* city solicitor, for appellant.—The city was not liable: Philadelphia v. McManes, 175 Pa. 28; Rosenblit v. Phila., 28 Pa. Superior Ct. 587; Creadick v. Phila., 18 Pa. Dist. Rep. 803; Board of Public Education v. Ransley, 209 Pa. 51; Com. v. Park, 10 Phila. 445; Bucher v. Northumberland, 209 Pa. 618.

*Clarence Loeb,* with him *Graham C. Woodward,* for appellee.—The liability of the city is consistent with pre-

cedent: Hey v. Philadelphia, 81 Pa. 44; Barthold v. Philadelphia, 154 Pa. 109; Glase v. Philadelphia, 169 Pa. 488; Rhine v. Philadelphia, 24 Pa. Superior Ct. 564.

Although there are some cases to the contrary the management and care of public squares, parks and commons has been held to be not an exercise of sovereignty, and therefore the city is liable for its negligence in failing to care for them: Fox v. Philadelphia, 208 Pa. 127; Laird v. Pittsburg, 205 Pa. 1.

This liability is consistent with law: Weber v. Harrisburg, 216 Pa. 117; Philadelphia v. Germantown Pass. Ry., 10 Phila. 165; Fairmount Park-Wissahickon Creek Boundary, 14 Pa. Dist. Rep. 334; Com. v. Park, 10 Phila. 445.

OPINION BY RICE, P. J., February 27, 1913:

This action was brought to recover damages for injuries caused to Catharine Ankenbrand by falling into a hole in a footway in Fairmount Park, a public park within the limits of the city of Philadelphia. Interpreting the verdict in the light of the charge of the court, it implies a finding that this defect in the sidewalk had existed for such a length of time as gave the proper officials constructive notice of it, and this finding was fully warranted by the evidence that it had existed since the summer of the preceding year. The verdict also implies a finding, which was warranted by the evidence, that the plaintiff was not guilty of negligence that contributed to the injury. Further, it was alleged in the statement of claim, and admitted on the argument here, that the place where the defect existed and the accident occurred, was in a public highway. True, the place was inside the park. But it is to be noticed that, by sec. 8 of the Act of April 14, 1868, P. L. 1083, the jurisdiction of the park commissioners extends to the breadth of the footway next the park in all avenues or streets which bound on the park. A ruling that the city cannot be sued for injury to a pedestrian, caused by a defect in a highway within the park limits, would apply likewise to a similar injury occurring

on a footway next the park, in a public street of the city
bounding the park.  As counsel for the plaintiffs per-
tinently suggest, it would result that a person who is
injured on a negligently kept footway on the park side
of an adjoining street, would have no legal redress,
whereas the city would be liable if the injury were caused
on the opposite side of the street.  It is thus seen that
the question involved is a very broad one, and that the
establishment of the defendant's contention in this case
would be far reaching in its effect as a precedent.

The general rule in Pennsylvania is, that a municipal
corporation having the power and subject to the duty
to maintain the highways within it, is chargeable with
the consequences of the presence of an actual and unlawful
obstruction or negligent defect in that portion of a
highway within its limits, which the general public is
invited to travel, at least as soon as it can be said to have
knowledge of the obstruction or defect.  This, it was
said in Mattimore v. Erie, 144 Pa. 14, must be conceded,
and it is not denied here that, as to the generality of public
streets, lanes, and alleys, the city of Philadelphia is so
chargeable.  The fact that a highway in a municipality
is within or passes through an uninclosed public park,
does not change the rule.  Thus, in Weber v. Harrisburg,
216 Pa. 117, a judgment in favor of the plaintiff was sus-
tained under the following circumstances.  The plaintiff
was injured by falling over an iron cable stretched across
a path along the river front in the city of Harrisburg.
The cable was partly buried in the path.  The evidence
showed that the locality in question had long been used
as a public park, under the control of the city, and also
as a public landing place.  The cable in question had been
stretched across the path by boatmen to secure boats
in the river.  Mr. Justice POTTER, after pointing out that,
under the finding of the jury, the city had assumed con-
trol and management of the place where the accident
occurred, said: "Being then in control, it was manifestly
the duty of the city to see that the pathway was kept

in a safe condition for the use of the public." Further
on in his opinion he said: "We can see nothing inconsistent
in an attempt to retain for the benefit of the navigators
a proper use of the river bank for landing purposes, while
at the same time provision was made for the use of the
property by the public as a park or pleasure ground.
In any event the city would be under the duty of seeing
that the place was not dangerous to the public. Even
if used as a wharf, or landing place, this responsibility
would remain." We do not cite this case as controlling
the present in all of its features. It is, however, pertinent
as showing that exemption from liability in the present
case must rest on some other foundation than that the
place where the accident occurred was within the limits
of a public park or pleasure ground. Counsel for de-
fendant do not take that position, but base their conten-
tion on the supposed lack of control and dominion by
the city over the place where the accident occurred.

By the Act of March 26, 1867, P. L. 547, it was pro-
vided that the incumbents for the time being of certain
city offices designated in the act, namely, the mayor,
the presidents of the select and common councils, the
chief engineer and surveyor of the city, and the chief
engineer of the water works, and ten citizens of Phila-
delphia to be appointed by the court of common pleas
of Philadelphia, shall constitute the commissioners of
Fairmount Park. Amongst the provisions of that and
other local acts relating to their powers and duties, the
following may be appropriately mentioned. They shall
adopt a plan for the improvement and maintenance of
the park; they shall have the care and management of
the park and the power to maintain it in good order and
repair; all plans and expenditures for improvement and
maintenance of the same shall be under their supervision
and control; they may vacate any street or road within
the boundaries of the park (excepting Girard avenue),
and open for public use such other roads, avenues, and
streets therein as they may deem necessary; their juris-

diction shall extend to the breadth of the footway next the park in all avenues or streets which bound on the park, and they shall direct the manner in which such footways shall be laid out, curbed, paved, planted, and ornamented; they shall appoint such officers, agents, and subordinates as they may deem necessary, and prescribe their duties and compensation; they may acquire the whole of a tract of land where part of it lies within the park, and take conveyance thereof "in the name of the city," and may sell the part lying without the park and convey the same by deed "to be signed by the mayor under the seal of the city to be affixed by direction of councils;" they shall have exclusive power to lease all houses and buildings within the park, which may be let without prejudice to the interests and purposes of the park, and collect the rents and shall pay them into the city treasury; they shall have power to accept, in the name of and on behalf of the city, devises, bequests, and donations of lands, money, objects of art, and other things, upon such trusts as may be prescribed by the testator or donor, provided such trusts are satisfactory to the commissioners and compatible with the purposes of the park. It is also provided by statute that the park shall be under certain rules and regulations, expressly prescribed therein, "and such others as the park commissioners may from time to time ordain." The foregoing is not intended to be a complete enumeration of the powers and duties of the commissioners of Fairmount Park, but it is sufficiently extensive to show the basis of the defendant's contention that control and dominion over the place where the accident occurred were not vested in the city, but in the commissioners of Fairmount Park.

It must be conceded that, by virtue of the statutory provisions to which we have referred, the commissioners have very broad powers over that portion of the city embraced within the park, and even over the adjoining footwalks, and that the exercise of many of these powers is not subject to direct review or control by the mayor and

councils or any other city officer or municipal tribunal. But extensive as are these powers, they fall far short of constituting the commissioners of Fairmount Park a body corporate, municipal, quasi municipal, or private, and vesting in that body, as a separate distinct corporate entity, dominion over the park and the highways therein to the exclusion of the city. The question is one of legislative intention, and that the legislature had not such intention, but rather the intention to preserve the paramount dominion of the city, will appear conclusively when other provisions of the same statutes are brought into view. By the Act of February 2, 1854, P. L. 21, pursuant to which the city ordinance of September 23, 1855, creating Fairmount Park, was adopted, it was made the duty of the city councils to obtain, by dedication or purchase, within the limits of the city, sufficient ground, convenient of access to all its inhabitants, and "maintain" such squares and areas of ground as open public places for the health and enjoyment of the people forever. Thus, in the first legislation on the subject, the duty of maintenance was imposed on the city, and in all later legislation this duty has been kept prominent. By the act of 1867, the title to and ownership of the area of ground within the designated boundaries of the park declared to be vested in the city "to be laid out and maintained forever as an open place and park for the health and enjoyment of the people of said city," etc. And this was reiterated in the supplementary act of 1868 as to the ground within the boundaries of the park as designated in the latter act. The foregoing legislation is sufficiently explicit to show, without reference to the legislation relative to the acquisition of other property by purchase, gift, or the exercise of the power of eminent domain, that the title to and ownership of all ground within the park limits, however acquired, are vested in the city, and that the duty of maintaining the same as a park is imposed on the city. If further confirmation of this view is needed, it will be found in the Act of March 16, 1870,

P. L. 451, which, after reciting in the preamble that the city had purchased a large body of land and laid out and improved the same as a public park, known as Fairmount Park, and had expended several millions of dollars therefor, declared: "That the city of Philadelphia is hereby required to maintain and keep open the said Fairmount Park for the free use of all the citizens of this state, subject to the rules adopted for the good order and government of the same." In line with this express and unequivocal legislative declaration are the statutory provisions authorizing and requiring the city to raise by loans such sums of money as shall be needed to make compensation for all ground taken or to be taken for the park, for the laying out and construction thereof for public use and for the permanent care and improvement thereof, and to annually assess taxes for keeping it in good order and repair. So also are the provisions, that the control of the commissioners over plans and expenditures for improvement and maintenance is subject to such appropriations as council may make; that no contract for improvement shall be made by the commissioners unless an appropriation therefor shall have been first made by councils; and that all such licenses, charges, and fees, all fines, proceeds of sale, and profits to be collected, received, or however realized, shall be paid into the city treasury as a fund to be exclusively appropriated by councils for park purposes So also is the provision that the commissioners shall annually make to councils a report of their proceedings and a statement of their expenditures.

We have gone sufficiently into detail, perhaps more than was necessary, in reviewing the legislation. In order to bring prominently into view its material and controlling features, we recapitulate: The title to and ownership of the park and all that belongs to it, whether acquired by purchase, donation, or the exercise of eminent domain, are vested in the city. Except for donations (and these were made to the city) the cost of its laying out, improve-

ment, and adornment was borne by the city, and the money that goes to its maintenance and government comes from the city treasury. The commissioners have no fund under their direct control which they can use for these purposes. Their power to contract for its improvement does not go beyond the amount previously appropriated by councils for the purpose, and all their expenditures are subject to such appropriations as councils may make. As was said by Judge PAXSON, the authority of the board is subject "to the important provision that it has to look to city councils for the money which it expends for such purposes. This check will always protect the city from reckless or unauthorized expenditure:" Phila. v. Germantown Pass. Ry. Co., 10 Phila. 165. The commissioners of Fairmount Park do not constitute a corporate body with capacity to sue and be sued as such, and they are not officers of a corporation or quasi-corporation separate and distinct from the city. Finally, the power and the duty of the city to maintain, which ex vi termini includes the power and the duty to keep in reasonably safe condition, do not rest on uncertain inferences, but on express and unequivocal legislative declaration.

It will be seen from the foregoing review, that the city's relation to the park and the park commissioners is quite different from its relation to the school district (a quasi municipal corporation) and the board of public education, and the differences are of such a nature as to take the case out of the operation of the principles that were held to control in Board of Public Education v. Ransley, 209 Pa. 51, and Rosenblit v. Phila., 28 Pa. Superior Ct. 587. Further, that there are material and substantial differences was expressly recognized by this court in the last-cited case, as the following excerpt from the opinion of our brother PORTER will show: "While the undertaking of a city to maintain a public park is, generally speaking for a public purpose and the public may have a share in the enjoyment of its advantages, the municipality may

also have a peculiar local interest therein and benefit therefrom, and municipal corporations, in such matters, come under a larger measure of liability, than that applied to school districts in the discharge of their governmental duties." Ashby v. Erie, 85 Pa. 286, another case much relied on by appellant's counsel, is also distinguishable upon the ground thus stated by Justice BROWN in Fox v. Phila., 208 Pa. 127: "These commissioners (of water works) were an independent board, wholly independent of the city authorities, and it was not liable for the nonperformance of a duty which had not been imposed upon it, but, by the very words of the statute upon the board of commissioners." Here, the duty of performance, as we have seen, was expressly imposed on the city.

It may be said that the city, as such, has no voice in the selection of the commissioners. This is true only in part, for some of the commissioners become such by virtue of their being city officers, and the others are appointed by judges who were elected by the people of Philadelphia. But even if it were wholly true, it would not be a conclusive reason for holding the city exempt from liability for their acts. It is true of a city, as of every corporation, that it can perform its corporate functions and duties only through natural persons. But, as the city derives its powers from the legislature, it is for that body to determine how the officers and agents of the city shall be selected. It might, in the present instance, have designated the city councils to exercise the powers and perform the duties in question, or a board to be appointed by them or to be elected by the people of the city, and, in either event, we suppose it would not be questioned that the officers so elected were the representatives and agents of the city. But we cannot see that the commissioners of Fairmount Park are any less the representatives and agents of the city in doing that which it is made the duty of the city to do, because they are not appointed in either of the ways above suggested. This view is well supported by the opinion of Mr. Justice HUNT in

Barnes v. Dist. of Columbia, 91 U. S. 540. See, also, Burridge v. Detroit, 117 Mich. 557, where it was said, citing authorities, the city may act through such agencies as the legislature directs. Justice HUNT said: "A municipal corporation may act through its mayor, through its common council or its legislative department by whatever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the provisions committed to its charge. Nor can it in principle be of the slightest consequence by what means these several officers are placed in their positions—whether they are elected by the people of the municipality or appointed by the president or a governor. The people are the recognized source of all authority, state and municipal; and to this authority it must come at last, whether immediately or by circuitous process." The conclusive test is not the mode of appointment of the commissioners (although that may be a pertinent circumstance in arriving at the legislative intent as to where a duty has been imposed), but the nature of their functions with reference to the public ways of the city within the park limits. Without further elaboration our conclusion is, that as to such matters they constitute an agency of the city, through which the city performs a municipal function and discharges a municipal duty, and therefore the city was liable for the neglect to keep the footway in proper repair.

The judgment is affirmed.