## Sowers *v.* Philadelphia, Appellant.

*Negligence—Municipalities—Parks—Pathway in park.*

A municipality is not responsible for injuries sustained by a pedestrian from a fall in a defective pathway in a public park owned by the city, where it appears that the pathway had not been constructed by the city for the use of the public, but had been worn in the grass by certain railroad employees' as a short cut to their work, with nothing on the ground to lead any one to believe that the pathway had been constructed for public use.

Where a person walks along such a pathway in the night time, when it is very dark, without any knowledge of the path from previous use of it, and falls over a bank at the edge, he is guilty of contributory negligence, and especially is this the case where a regular, but longer path, would have taken the person injured to his destination.

Argued Dec. 13, 1915.   Appeal, No. 62, Oct. T., 1915, by defendant, from judgment of C. P. No. 4, Philadelphia Co., Dec. T., 1913, No. 2001, on verdict for plaintiff in case of William S. Sowers v. City of Philadelphia. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ.   Reversed.

Trespass for personal injuries.   Before WILLSON, P. J.

The facts relating to the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $428.   Defendant appealed.

*Error assigned* was refusing motion of defendant for judgment n. o. v.

*Paul Reilly,* Assistant City Solicitor, with him *Thomas Boylan,* Assistant City Solicitor, and *Michael J. Ryan,* City Solicitor, for appellant.—Plaintiff was guilty of contributory negligence: Lerner v. Philadelphia, 221 Pa. 294; Decker v. East Wash. Boro., 21 Pa. Superior Ct.

Arguments—Opinion of the Court. [63 Pa. Superior Ct. 211; Erie v. Magill, 101 Pa. 616; Pittsburgh, Etc., Railway Co. v. Taylor, 104 Pa. 306; Crescent Twp. v. Anderson, 114 Pa. 643; Lynch v. Erie, 151 Pa. 380; Haven v. Pittsburgh, Etc., Bridge Co., 151 Pa. 620; Boyle v. Mahanoy City, 187 Pa. 1; Purcell v. Riebe, 227 Pa. 503; Scranton v. Hill, 102 Pa. 378.

If it was not a public highway, there is no municipal liability to the plaintiff: Steel v. Huntingdon Borough, 191 Pa. 627; State v. Wilson, 42 Maine 9; Garnett v. Slater, 56 Mo. App. 207; Millikin v. Bowling Green, 9 Ohio Cir. Ct. 493; Lurgin v. Lowell, 3 Allen (Mass.) 398; Biggs v. Huntington, 32 W. Va. 55; Blair v. Granger, 24 R. I. 17; Oliver v. Worcester, 102 Mass. 489; City of Scranton v. Hill, 102 Pa. 378; Monongahela City v. Fischer, 111 Pa. 9; Ruppenthal v. City of St. Louis, 190 Mo. 213; Stadelman v. City of New York, 126 App. Div. 352; Hunter v. Weston, 111 Mo. 176.

*Samuel Scoville, Jr.,* for appellee, cited: Ankenbrand v. Philadelphia, 52 Pa. Superior Ct. 581; Weber v. Harrisburg, 216 Pa. 117; Steck v. City of Allegheny, 213 Pa. 573; Holbart v. Philadelphia, 221 Pa. 275. .

OPINION BY HENDERSON, J., May 9, 1916:

The plaintiff was injured by falling down a bank in Fairmount Park. The accident occurred after dark while he was going from the 34th street bridge along a hedge separating the park from the Pennsylvania railroad, at a place where the bank had caved or sloughed off, leaving a space three or four feet wide next the hedge. He had never gone this way before, but it appears from the evidence that some employees of the railroad company were accustomed to walk along the hedge over this elevation because it was a "short cut" from the bridge. A path was worn in the grass by such use but no way had been made or established by the park authorities. They had caused a paved path to be made leading from the 34th street entrance around the bank

in the same direction and a few feet away from the place on which the plaintiff was walking but because it was a shorter distance some persons who desired to pass through the hedge onto the railroad property went along the top of the bank instead of following the paved way. The depth of the slope was about ten feet. The case was tried on the theory that it was the duty of the municipal authorities to maintain the place along which he walked in a safe condition at all times as a public way and that responsibility resulted because the caving in of the side of the bank diminished the footway thereby causing him to fall down the bank, and the learned trial judge instructed the jury that "if a path, a walk or a course of travel is allowed to exist though it is not laid out by the defendant and never has been, but has been allowed to exist and people have been allowed to use it then the person responsible for the condition of the walk or highway may be held responsible in case a defect comes in it so a person using it in a proper and lawful way is injured"; and this with respect to a park or any other place for which a defendant is responsible. The first question for consideration, therefore, is whether the rule as to the responsibility of municipalilties for the maintenance of public highways applies to a city which holds the title to a public park. The responsibility of such municipalities for the proper maintenance of highways is unquestioned. It is a charge existing both at common law and by statute and the cases cited by the plaintiff bearing on this subject are of undoubted authority. But a public park is not a street or road; it is a piece of land set apart for purposes of ornamentation, exercise and amusement and is usually selected with reference to its special adaptation. In most instances such spaces include irregularities and picturesqueness of surface which produce variety and beauty. The grounds thus set apart belong to the public and are usually everywhere open except in the case of flower beds and lawns or other limited spaces used for exhibitions or special ornamentation.

The very extensive and beautiful park in which the plaintiff was hurt has many broken and irregular localities where precipitous ravines, projecting rocks, obtruding roots and drooping branches of trees give inequality and variety to the landscape.  The park is approached from many directions and the curiosity or convenience of pedestrians takes them over its surface in numberless ways over hills, through ravines, down abrupt banks and along wood paths.  More or less risk is necessarily involved in walking in some directions.  Footpaths are formed by the repeated use of particular courses of travel as the extensive area of the park is used by very many pedestrians.  To apply the doctrine of responsibility for highways to the large number of footpaths inevitably developed over the broad expanse of this park is to charge the city with the performance of a duty not necessarily involved in its administration of the park and for which no authority has been brought to our attention which goes to the length required to support the plaintiff's contention.  No specific statutory liability is alleged nor do we find the responsibility at common law necessary to support this view.  Two Pennsylvania cases are referred to which it is contended sustain the ruling of the court below.  One of these is Ankenbrand v. Philadelphia, 52 Pa. Superior Ct. 581.  The principal question in that case was whether the commissioners of Fairmount Park are a body corporate, municipal, quasi municipal or private and whether they had dominion over the park to the exclusion of the city.  The other question related to the responsibility for a public highway bordering on the park.  The decision was that the fact that a highway in a municipality is within or passes through an unenclosed public park does not change the rule as to such responsibility.  As the ownership of the park was held to be vested in the city to be maintained forever as an open place and park and as the city was responsible for the construction and maintenance of public streets it followed as a logical consequence that where a

street opened and improved by the city was permitted to remain in a dangerous condition liability arose, but the decision went no further. It contains no intimation that the numerous footpaths established by the many people wandering through the park are ways for which the city is responsible as public streets. The other case is Weber v. Harrisburg, 216 Pa. 117. That case grew out of an obstruction across a roadway along the river front in the City of Harrisburg. This river front was a public landing place; it was used as a street and contained a path for pedestrians; it had for many years been dedicated to this use and had the characteristics of a public way. The responsibility of the city attached because it had control of the whole river front and the slopes which comprised a park. The mooring cable crossed this public way in such a manner as to constitute an obstruction. Whether work had been done by the city on the premises does not appear in the report of the case but the conclusion seems to have been rested on the situation of the premises and the character of the roadway at that place. We do not understand the decision to hold that wherever a footpath is made by persons meandering through a public park or as a short cut from point to point the responsibility of the municipality attaches as in the case of a public highway. The freedom of the people to walk where they please, over smooth or rough ground, up or down hillsides, through ravines or over rocky ledges is inconsistent with the theory of a duty on the part of the municipality to search out the paths so made and make them in good condition as in the case of streets and alleys. Where the park authorities construct roads and walks for the use of vehicles and pedestrians and thereby invite the use of such ways a different rule is involved. But where as in this case there was no municipal action establishing a way nor anything on the ground leading the plaintiff to believe that a path had been constructed for public use no municipal duty arose: Blair v. Granger, 24 R. I. 17; People v. Green, 52 Howard

Practice 440; Clark v. Waltham, 128 Mass. 567.   There was no general right of passage along the hedge as a public highway and the use made of the place by the pedestrians who passed along the top of the bank rather than along the regularly constructed walk near the foot of the slope did not have the effect to make the space so used by them such highway.

Another objection raised by the appellant is that the plaintiff was guilty of contributory negligence.   He had not walked over the ground before, had not up to that time seen the path used by his fellow workmen; it was a dark night and there were no lights.   The plaintiff said "I couldn't see anything.   It was dark and I couldn't see anything."   Q.—"Could you see the hedge?"   A.—"I could see the hedge but that was about all.   That was a dark form.   That was all I could see."   He was in a hurry and took this path for that reason.   In going along he fell over a stump before reaching the place where he went down the bank.   He did not see the stump nor the place where the bank had caved.   The paved path lower down the side of the hill led from the 34th street bridge where the plaintiff entered the park and that he could have taken in the direction he wanted to go, but he chose to walk along the top of the bank without a knowledge of the condition of the ground and without any express or implied invitation of the park authorities to go that way.   Under such circumstances we think the contributory negligence of the plaintiff is apparent.   If he had kept the path built by the park authorities he would have avoided danger.   In going along the crest of the hill he incurred the risk of going over the bank in the darkness.   At the best there was a space of about six feet between the hedge and the slope of the bank and on a dark night without knowledge as to the locality there was danger of falling.   Unless the defendant is bound to provide secure ways of travel to all persons who by day or night may choose to pass over the open spaces of the park along bypaths, cross-cuts and other courses of travel sug-

gested by the convenience or curiosity of pedestrians the plaintiff was not justifiable in adopting the course he took. We think, for the reasons given, the defendant's point for binding instructions should have been affirmed.

The judgment is reversed.