MAYOR AND CITY COUNCIL OF BALTIMORE
*v.* AUGUST W. EAGERS, ADMINISTRATOR

[No. 24, April Term, 1934.]

*Decided June 12th, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*R. E. Lee Marshall, City Solicitor,* and *Edwin J. Wolf, Assistant City Solicitor,* with whom was *J. Francis Ireton, Assistant City Solicitor,* on the brief, for the appellant.

*Benjamin H. McKindless,* with whom were *Harry C. Kalben* and *Ellis L. Arenson* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

While walking in Collington Square, in the City of Baltimore, on September 8th, 1932, August Eagers was injured by a large limb of a tree falling upon him, and, as a result of the hurt, died two days later. His administrator brought an action in tort against the Mayor and City Council of Baltimore, a municipal corporation, to recover damages for the pain and suffering and pecuniary loss sustained by the decedent before his death as a direct result of the injury received. The defendant sought a directed verdict in its favor by offering suitable prayers, which presented the defendant's alternative defenses (1) that the testimony did not establish that the defendant had committed any act of primary negligence; (2) that if the defendant were negligent, the plaintiff was barred because of his decedent's contributory negligence; and, finally, (3) that the accident occurred during the course of the performance of a governmental function for which the municipality was not liable to respond in damages.

1. There was testimony in the case that tended to establish these facts. Collington Square, in Baltimore City, is ornamented by trees and has sidewalks and paths

for public use. On the day of the accident a gang of twelve or fourteen laborers was engaged in removing some of the growing trees in the square. During the morning two trees had been removed, and in the afternoon the men had begun on the third tree, which was a poplar, and stood, apart from shrubbery or undergrowth, about twenty feet west of the inside of the walkway in the square which bordered on Patterson Park Avenue, and about one hundred feet north of the inner side of the walkway in the square which paralleled Preston Street on the south of the square. The trunk of this tree rose to a height of from twelve to twenty-five feet, and then forked, one limb branching to the east toward Patterson Park Avenue and the other to the west.

Following the usual method, the gang had dug down and removed the earth about the tree, and cut the roots to loose the tree and make it easier for it to be pulled down, as the tree had been climbed and a heavy rope had been knotted around both branches of the tree above the crotch where it divided into a wye. The rope was attached to a block and fall, which was fastened about the trunk of another tree in the square and standing south of the tree to be pulled down. With the free end of the rope in their hands, the workmen pulled in a southwesterly direction, in the expectation that the tree would fall that way. However, the limb of the wye of the condemned tree extending towards the walk along the western edge of Patterson Park Avenue on the east was rotten, and, under the strain and constriction of the pull by the workmen, snapped off seven inches above the crotch, and fell without any warning of the break. The limb was about twenty feet long and nine inches in diameter, and fatally injured August Eagers, who was walking in a southerly direction toward Preston Street, on the center of the sidewalk whose nearer margin was twenty feet east of the trunk of the tree. While the defendant's testimony is to the contrary, that on the part of the plaintiff tends to prove that the limb that fell was dead and rotten. Although it was in the early part of

September and the tree was in foliage, there were no leaves on the branches and twigs of the limb that snapped under the strain of the pull of the rope, and the condition of the limb was evident from its appearance. Notwithstanding these facts, the pull of the men was against the dead limb, which was thus subjected to the full effect of the tug. There was, also, testimony that the decedent was not warned of any danger.

If, notwithstanding the testimony offered by the defendant, the jury should find these facts from the evidence, a clear case of primary negligence would be established. To attempt, near a public walk, to pull down, without warning, a large and heavy tree by means of a block and fall whose entire stress is borne by an unsound limb whose dead and rotten condition is evident, is testimony to go to the jury in proof of primary negligence, when an injury results.

2. Neither ropes nor barriers nor other warnings of danger were placed on the sidewalk, and public travel was neither forbidden nor interrupted, and there is testimony in the case which, if believed, would show that the decedent sustained his injury without any warning.

It is but fair to assume that the decedent saw the men engaged in their labor, but it was reasonable for him to believe that their skill in their work had caused them to guard against accident, and so to control the fall of the tree that it would come down in the direction which had obviously been planned. The snapping off of that part of the wye of the tree to which the rope was secured, and the unanticipated fall of the broken limb in an opposite direction from the one in which the limb was being pulled, could not reasonably be said to have been anticipated by the decedent. Under such circumstances, a person on a public walk, at least twenty feet distant from the place where an effort is being made to pull down a tree so as to fall in a direction away from him by means of a block and fall, is not, while walking on the sidewalk away from the scene, guilty of an act of negligence of such a distinct and decisive nature as to leave no doubt in the mind of a

132

reasonable person that the plaintiff's act is the immediate, final, and efficient cause of the injury he sustained. On the contrary, this testimony, with the other variant testimony on the part of the defendant, was properly left with the jury to determine the controverted question of the decedent's contributory negligence.

3. The men engaged in the removal of the tree from a public square, which occupied a city block and was under the immediate control of the municipal board of park commissioners, were the employees of the municipal bureau of highways working in its city forestry division; and, conceding their negligence was the proximate cause of the injury to the decedent, the question is whether the nature of the work in which the men were employed was such as to permit an action at law in tort against the municipality. '

The liability of the defendant must be determined under a true interpretation of the Constitution and the statutes under which it was created and its powers were granted and its duties imposed. Section 1 of the charter provides that the defendant may sue and be sued; and by section 6, subsections (16) and (24), the defendant is given full power and authority to establish, maintain, control, and regulate parks or squares in the City of Baltimore for the recreation and benefit of its citizens, and subsection (18) authorizes the municapility to pass ordinances securing property and persons from violence, danger and destruction. Charter & P. L. L. of Baltimore City (1927) pp. 5, 24-32, 26; for highways, see subsection 26, pp. 35-42.

The executive power of the defendant is vested in the mayor, the departments, subdepartments, municipal officers not embraced in a specified department, and such special commissioners or boards as are provided for under by-laws or ordinances not inconsistent with the charter of the defendant. Section 31, pp. 68, 69 of Charter, etc. Among these departments is the department of parks and squares, which is composed of the board of park commissioners. The board is given charge and con-

trol of all public parks, squares, boulevards leading to parks, springs, and monuments belonging to and controlled by or in the custody of the defendant and shall perform such duties as may be prescribed by ordinances not inconsistent with the municipal charter. The board has full power to employ and compensate all persons whom, in its judgment, it may deem proper in maintaining and supporting such parks, squares, springs, and monuments, or any other building, collection, garden, or reservation provided for in the charter. However, the board may request and obtain from the department of public works, which embraces the bureau of highways, such services as are incident to the usual operations of that department and required by the board. Charter of Baltimore (1927), secs. 90-98, pp. 141-143; 85A, part 1, pp. 108, 109, 112, 113, part III, p. 134. This jurisdiction of the board of park commissioners over Collington Square was, in 1910, extended by the General Assembly of Maryland over the sidewalks which border on this square or park to the curb lines of the sidewalks as then established. Acts of 1910, c. 142, Charter (1927), sec. 98A, p. 143.

These recited provisions of the charter and statutes make clear that the department of parks and squares and the department of public works are executive agencies of the municipality to enable it the better to function in its corporate capacity. *Calvert County v. Gibson,* 36 Md. 229; *Baltimore v. Hampton Court,* 126 Md. 341, 346-348, 350, 94 A, 1018; *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. Ed. 440; *Burridge v. City of Detroit,* 117 Mich. 557, 559, 76 N. W. 84.

As has been stated, the board of park commissioners, which constitutes the department of parks and squares, has the right to request and obtain from the department of public works such services as the board might require in its maintenance and care of the parks and squares, provided such services are incident to the usual operations of the department of public works. Since the bureau of highways, with the highways engineer as its

head, is one of the subdepartments or bureaus of the department of public works, and this bureau, by its highways engineer, is authorized and directed to regulate the removal of all trees in the streets of Baltimore not under the jurisdiction of the board of park commissioners, and to appoint a city forester and other employees and necessary assistants for this and other allied services, it is plain that the board of park commissioners had the authority under the law to request, and the department of public works to furnish, the services of its employees, who, acting under the direction and control of the city forester, were engaged in removing the tree, whose limb fell and fatally injured the plaintiff's decedent. Baltimore City Code (1927), art. 45, secs. 174-188, pp. 1052-1055.

So, this *intra vires* corporate act of the servants or employees of the department of public works, who were engaged in the work of its subdivision, the bureau of highways, was the act of the municipality, but the liability of the municipality not having been expressly created or declared by statute, an implied liability in tort for which a civil action will lie against the municipality for the acts of its agents or servants must be found in the nature of the municipal power and duty, and the applicable charter and statutory provisions, when considered and interpreted in connection with the ability of the municipality to sue, and its liability to be sued, in its corporate and private capacity.

It is obvious from these provisions of the charter and statute that the municipality had cast upon it the duty of keeping the square safe for those using its walks, and that this duty involved the removal of the trees, which were standing in the square, with reasonable care and skill, so as to do no injury to those on the sidewalks while exercising due care and caution according to the circumstances. The duty of the municipality did not depend upon the work being done by those servants who had been employed by the park commissioner, because the servants of the department of public works would be

none the less the servants of the municipality in this service. Consequently, the liability of the municipal corporation to civil action, for misconduct or neglect on its part or on the part of its officers and servants in respect to the manner of performing corporate duties causing injury to a person, does not here hinge upon what servant of the municipality was guilty of the wrongful or negligent act, but upon what was the nature of the act.

If the neglect or wrongful act was in the course of the performance of a purely governmental duty which had been imposed upon the municipality as a governmental or public agency by legislative enactment, there would be no liability in tort in favor of an individual who had been injured. This doctrine has general recognition, and various grounds have been assigned in its support, notably, that, at common law, no civil action would lie against a municipal corporation for the neglect of a public duty imposed upon it as the agent of the public by general law for the benefit of the public generally, and from the performance of which the municipal corporation would receive no profit or special advantage. *Dillon on Municipal Corporations* (5th Ed.) sec. 1643; *Gold v. Baltimore,* 137 Md. 335, 112 A, 558; *Wallace v. Baltimore,* 123 Md. 638, 91 A. 687.

If, on the contrary, the power given and the duty enjoined relate to the local or special interests of the municipality, and be imperative, and not discretionary, legislative, nor judicial, and the wrongful act is done in the performance of such a duty, then the act is said to be done in the private or corporate capacity of the municipality as distinguished from an act done in its political and governmental capacity as an agency of the state, and the municipality must answer civilly for the negligence or want of skill of its agent or servant in the course of his employment, if the wrongful act result in injury to another, who is free from contributory negligence. *Dillon on Municipal Corp.* (5th Ed.), sec. 1645, 1646, 1651, 1665, 1666, 1668; *Consolidated Apartment House Co. v. Baltimore,* 131 Md. 523, 528-536, 102 A. 920; *Gutowski*

136

*v. Baltimore,* 127 Md. 502, 508-510, 96 A. 630; *Harris v. Baltimore,* 151 Md. 11, 17, 18. 133 A. 888.

It is often difficult to determine in a particular instance whether the duty involved is in the exercise or neglect of the municipality's governmental or political functions or of its ministerial and private or corporate functions. The decisions do not furnish a satisfactory test, as they are conflicting in their reasoning and conclusions. In the case at bar the problem concerns not only the beauty, utility, and safe enjoyment by the public of the square but also the safety of the use of a public way through a square of a municipal corporation. There is no question that, by the great weight of authority, the rule of law is that it is a private proprietary obligation of municipal corporations to keep their streets and public ways reasonably safe for travel in the ordinary manner, and to prevent and remove a nuisance affecting the use and safety of these public ways. This rule is founded on the principles of agency and torts, and exemplifies the basic conception that every one, in carrying through an affirmative course of conduct, must, at his peril, act with due care, according to the circumstances. *Baltimore v. Marriott,* 9 Md. 160; *Consolidated Apartment House Co. v. Baltimore,* 131 Md. 523, 536, 102 A. 920; *Thillman v. Baltimore,* 111 Md. 131, 136, 140, 141, 73 A. 722; *Gutowski v. Baltimore,* 127 Md. 502, 506-510, 96 A. 630; *Wynkoop v. Hagerstown,* 159 Md. 194, 198-200, 150 A. 447; *Hanrahan v. Baltimore,* 114 Md. 517, 532, 533, 80 A. 312.

The duty to keep the streets and footways of the municipality in a safe condition for public travel, and to prevent and remove a nuisance affecting the use and safety of these public ways, extends to the land immediately contiguous to these public ways. *Infra. A fortiori* is it the duty of the municipality not to have or to suffer its agents and servants to create the danger on the public way of the municipality whereby the party was injured without any fault on his part directly contributing.

So, in *Havre de Grace v. Fletcher,* 112 Md. 562, 77 A. 114, the municipality was held liable where it had per-

mitted certain persons to stack beer kegs to a height of about eight feet on or near the side of a footway in such a negligent manner as to be dangerous, and to fall upon and injure a traveler while walking along the street in the exercise of reasonable care. Again, in *Hagerstown v. Crowl*, 128 Md. 556, 97 A. 544, the municipal corporation was held liable in damages for its neglect in failing to keep its sidewalks safe for pedestrains against falling material from the upper story of a building in course of erection adjacent to the sidewalk. See *County Commissioners of Anne Arundel v. Duckett*, 20 Md. 468 (nonrepair of highway); *Baltimore v. O'Donnell*, 53 Md. 110 (rope left across street as warning); *McCarthy v. Clark*, 115 Md. 454, 81 A. 12 (frame for manhole left partly on sidewalk); *Thillman v. Baltimore*, 111 Md. 131, 73 A. 722 (changing condition of alley); *Baltimore v. Walker*, 98 Md. 637, 57 A. 4 (projection left in sidewalk); *Cochrane v. Frostburg*, 81 Md. 54, 31 A. 703 (permitting horses and cattle to run at large on streets); *Hitchins v. Frostburg*, 68 Md. 100, 11 A. 826 (negligence or unskillfulness in execution or construction of sewer); *Baltimore v. Marriott*, 9 Md. 160.

Since the established rule of law is that the removal by the municipality of a tall tree, with a large, dead, and rotten limb branching dangerously from the wye to a public footway but twenty feet from the trunk of the tree, is not in the exercise of a governmental function, but in the performance of the private or proprietary and corporate duty of the municipality, it would be illogical and unreasonable to conclude that the same act, by the same employees, becomes political or governmental merely because the removal of the tree has, at the same time, the further effect of increasing the utility or beauty of a public square or its safety to those of the public who use it for other purposes than the use of its sidewalks to pass to and from the sidewalks of connecting public streets. *Kranz v. Baltimore*, 64 Md. 491, 498, 2 A. 908; *Cooley on Torts* (3d Ed.) p. 1308.

In the case at bar, the peril to the pedestrian in the

138

negligent removal of a tree near the public sidewalk was caused by the municipality sending its servants upon a public square, which was under the care and control of the board of park commissioners, to remove a tall tree, with a decayed large limb. The basic ground of the liability of the municipality is the negligence of its servants or agents acting within the scope of and in the course of the employment, and it is the court's conclusion that the nature of that employment did not prevent a right of action at law from arising for this misfeasance, *Supra; McQuillin on Munic. Corp.* (2nd Ed.) Sec. 2965.

For the reasons stated, the case was one for the jury, and the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*