949 A.2d 1

**Raya S. BAGHERI**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 782, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 6, 2008.

Reconsideration Denied June 26, 2008.

94

Patrick G. Senftle, Washington, DC, for appellant.

Karen L. Federman Henry (Leon Rodriguez, County Atty., Marc p. Hansen, Deputy County Atty., Christine M. Collins, on brief), for appellee.

Panel SALMON, JAMES R. EYLER and PAUL E. ALPERT, (Retired, Specially Assigned), JJ.

SALMON, J.

Bagheri brought a negligence suit against Montgomery County ("the County") in the Circuit Court for Montgomery County. After conducting discovery, the County filed a Motion for Summary Judgment on the grounds that it enjoyed governmental immunity from lawsuits such as the one filed by Ms. Bagheri. A hearing was held on the summary judgment

motion, after which, the court took the matter under advisement. On May 18, 2007, the court filed a Memorandum and Order granting summary judgment in favor of the County on the grounds that suit was barred by governmental immunity.

In this appeal, Ms. Bagheri contends that governmental immunity was not a valid defense to the suit she filed.

## I. FACTS[1]

The County owns and operates a parking garage located in Bethesda, Maryland. On June 8, 2004, Ms. Bagheri parked her car in the County's garage. She later returned to the garage and, while inside that garage, tripped and fell while walking towards her car. The cause of her fall was that the County failed to properly repair and maintain the concrete floor of the garage, which had an uneven section. When Ms. Bagheri stepped onto the uneven surface, she fell and fractured her right foot and injured her left knee and arm.

The parking garage where the subject accident occurred is operated by the Parking Operation Section of the Montgomery County government. All funds collected from the operation of the garage are applied to the Bethesda Parking Lot District Fund and are used to pay principal and interest on any outstanding bonds issued to acquire, build, restore, or improve parking facilities within the parking District. Any balance remaining after such payments is used by the County to acquire, build, maintain or operate off-street parking facilities and to reimburse the County for the general revenues advanced to the parking District. In the event that a balance remains after all these payments, the County's Director of Finance must hold such surplus funds until the next fiscal year and then apply them in the same manner as current revenues

---

1. The facts set forth in part I of this opinion are based upon information contained in the affidavit filed by the County, together with the interrogatory answers filed by both parties. These documents were relied upon by the motions judge and, for purposes of this appeal, the parties agree that there are no disputes as to material facts.

are applied. The parking garage in question does not operate for profit nor was it designated to operate at a profit.

## II. ANALYSIS

It is established Maryland common law that [a] "local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354 (1999). "When acting in a private or proprietary context, the entity also has *respondeat superior* liability for the tortious conduct of its employees." *Id.* at 47–48, 729 A.2d 354. The County has not legislatively waived immunity for accidents such as the one at issue.

While there is no single test to determine whether an action is governmental or proprietary in nature, the Court of Appeals has held that an action is considered governmental "[w]here the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest. . . ." *Rios v. Montgomery County*, 386 Md. 104, 128–29, 872 A.2d 1 (2005) (quoting *Mayor & City Council of Baltimore v. Blueford*, 173 Md. 267, 276, 195 A. 571 (1937)).

Montgomery County's act of maintaining the parking garage in question was: 1) sanctioned by legislative authority, 2) operated solely for the public benefit, with no profit or emolument inuring to the County, and 3) intended to benefit the public health and promote the welfare of the whole public. Moreover, there is "no element of private interests" involved in operating the garage. Therefore the actions of the County in operating the garage would appear to fit squarely within the definition of a "governmental function" as that term was defined in *Rios,* and *Blueford, both supra.*

Under Maryland law, the operation and maintenance of a public park is a governmental function, *Mayor & City Council of Baltimore v. Whalen*, 395 Md. 154, 167, 909 A.2d 683 (2006), as well as the operation of a day camp, *Austin v. Mayor & City Council of Baltimore*, 286 Md. 51, 64–66, 405 A.2d 255 (1979), a town pool, *Town of Brunswick v. Hyatt*, 91 Md.App. 555, 564–65, 605 A.2d 620 (1992), a police force, *Williams v. Prince George's County*, 112 Md.App. 526, 549–50, 685 A.2d 884 (1996), a courthouse, *Harford County Comm'rs v. Love*, 173 Md. 429, 433, 196 A. 122 (1938), and a transportation service, *Pavelka v. Carter*, 996 F.2d 645, 648 (4th Cir.1993). *See also*, Karen J. Kruger, *Governmental Immunity in Maryland: A Practitioners Guide to Making and Defending Tort Claims*, 36 U. Balt. L.Rev. 37, 66 (2006).

Utilizing the test set forth in *Rios, supra*, which we have quoted above, it is sometimes easy to decide whether the act in question is governmental or proprietary. But

[f]or historical reasons that are not well documented or articulated, in Maryland a municipality has a "private proprietary obligation" and "may be responsible for protecting individuals who are physically within the bounds of a public way from hazards caused by the governmental entity which may come from outside the boundaries of the public way . . . and should have been foreseen and prevented by the governmental agency." Therefore, "a municipality is *not* immune from a negligence action arising out of its maintenance of its public streets and highways," even though the building and maintenance of public streets and sidewalks is primarily for the public benefit and promotes public safety and welfare. Although there is little evidence that any municipality incurs a profit or compensation for road building, governmental immunity is not available to local governments for this function.

*Karen J. Kruger, supra.*, 36 U. Balt. L.Rev. at 66–67(emphasis added) (footnotes omitted).

In the subject appeal, appellant contends that the act of operating and maintaining a parking garage was a proprietary

function because "the site of the occurrence in the subject parking garage was an area of public travel" and therefore the County is not immune from suit. In support of this argument, citing *Higgins v. City of Rockville,* 86 Md.App. 670, 679, 587 A.2d 1168 (1991), appellant stresses that a municipality, like the County, has a private proprietary obligation "to maintain its streets, as well as the sidewalks, footways and the areas contiguous to them, in a reasonably safe condition."

Appellant attempts to synthesize the principles of law set forth in *Higgins* by saying that in Maryland there is a well settled "public travel" exception "to the governmental immunity doctrine." In appellant's view, whether the County was engaged in a governmental or proprietary function turns on the issue of whether the accident occurred in "an area of public travel." In support of her argument, appellant relies on *Higgins, supra,* and *Mayor and City Council of Baltimore v. Eagers,* 167 Md. 128, 173 A. 56 (1934).

The estate of Eagers brought suit against Baltimore City for an accident that occurred while city workers were removing a tree in a public square. *Eagers,* 167 Md. at 130, 173 A. 56. The tree was about twenty feet from a sidewalk. Eagers was walking down the sidewalk when one of the trees on which city laborers were working fell on him. He died two days later. *Id.*

In *Eagers,* the Court was required to decide, *inter alia,* whether the cutting down of a tree, which extended over a public sidewalk, was a proprietary or governmental function. *Id.* at 129, 173 A. 56. The Court held that because it was the obligation of the municipality to keep its streets and public ways safe for travel, that it was also the duty of the municipality to prevent its agents and servants from creating a danger on the public way. *Id.* at 136, 173 A. 56. Therefore, the Court held that Baltimore City was acting in its proprietary capacity when its workers were engaged in the tree cutting operation that endangered Eagers. *Id.*

The *Eagers* Court said:

The duty to keep the streets and footways of the municipality in a safe condition for public travel, and to prevent and remove a nuisance affecting the use and safety of these public ways extends to the land immediately contiguous to these public ways. *Infra.* A *fortiori* [,] is it the duty of the municipality not to have or to suffer its agents and servants to create the danger on the public way of the municipality whereby the party was injured without any fault on his part directly contributing.

*Id.* at 137, 173 A. 56.

In *Higgins v. Rockville, supra,* the Court was required to decide whether the City of Rockville enjoyed governmental immunity for an accident that took place on a driveway. The driveway led from a parking lot off Twinbrook Parkway and circled around behind a school and an athletic field and then back to Twinbrook Parkway. 86 Md.App. at 673, 587 A.2d 1168. When John Higgins was walking on the driveway towards the athletic field, he fell over a ten foot chain, strung between two posts, that blocked the middle section of the driveway. *Id.* at 674, 587 A.2d 1168. The *Higgins* Court found that the duty to maintain the driveway was a proprietary function. *Id.* at 685, 587 A.2d 1168. Judge Moylan, speaking for this Court, explained:

John Hayes, a witness representing the City at trial, characterized the driveway as a "service access" road. Evidence at trial showed that waste trucks, maintenance vehicles and voters dropping off their ballots regularly use the driveway. The *driveway was a place the City was proprietorially obligated to maintain "in a reasonably safe condition." Pierce v. Baltimore,* 220 Md. [286,] 290, 151 A.2d 915 [(1959)]; *Baltimore v. Eagers,* 167 Md. at 136, 173 A. 56. Under the agreement with the County, the City specifically agreed to maintain the driveway, thereby including it as part of the streets, sidewalks, and footways it already had a duty to maintain.

*Clearly, the City would have been liable to suit if its negligent maintenance of the driveway had led to the injury of the truck drivers who used it to pick up trash and*

*garbage from the rear of the school, of the operators of the maintenance vehicles who used it regularly to service the area or of the voters who used it to drop off their ballots at the school.* To the extent to which it was used as a pedestrian walkway as well as a vehicular driveway, the City would have been liable for any negligent maintenance that caused injury to those pedestrians. Once it is established that it was part of the proprietary responsibility of the City to maintain the driveway in a safe condition, the liability of the City was not contingent upon whether the injured pedestrians and/or motorists were bound for the rear of the school o r were bound for the playing fields.

The fact that the spot where Higgins tripped over the cable gate was close to the athletic field and the fact that he, and other pedestrians that evening, were headed toward the athletic field, do not erode in any way the City's proprietary duty to maintain the driveway. Had a pedestrian been injured, through the City's negligence, on Twinbrook Parkway or one of the other surrounding streets, the fact that the pedestrian was headed for the athletic field and closely approaching the athletic field would not confer upon the City an immunity that otherwise did not exist. In terms of the City's proprietary responsibility, the driveway was the equivalent of a surrounding street.

*Id.* (emphasis added).

Neither *Eagers, supra,* nor *Higgins, supra,* helps appellant prove her central point, which is that there exists a "public travel" exception to the usual rule set forth in *Rios,* 386 Md. at 128–129, 872 A.2d 1. *Eagers* simply stands "for the proposition that a municipality may be responsible for protecting individuals who are physically within the bounds of a public way from hazards caused by the governmental entity which may come from outside the boundaries of the public way on to the public way that could have and should have been foreseen and prevented by the governmental agency." *Whalen,* 395 Md. at 167, 909 A.2d 683. *Higgins* held that the driveway where the appellant was injured was part of the "streets, sidewalks, and footways" the City of Rockville was already

duty bound to maintain. 86 Md.App. at 685, 587 A.2d 1168. This result was unsurprising in light of the *Higgins'* Court's characterization of the driveway as a "service access road." In contrast to the situation in *Higgins,* the subject accident occurred nowhere close to a driveway or access road.

In her brief, appellant does not argue that the parking garage where the accident occurred constituted either a street, sidewalk, or a footway. Nor does she contend, at least not explicitly, that the accident occurred on a public way. Instead, she emphasizes that the accident occurred in "an area of public travel."

Maryland case law makes it clear that whether or not an accident occurs "in an area of public travel" is not determinative of the question of whether a municipality was engaged in a proprietary function in maintaining such an area. *See Heffner v. Montgomery County,* 76 Md.App. 328, 545 A.2d 67 (1988), and *Burns v. Mayor & City Council of Rockville,* 71 Md.App. 293, 525 A.2d 255 (1987). In *Heffner,* the plaintiff slipped and fell on the lobby floor of the Montgomery County Judicial Center where the circuit court is located. 76 Md.App. at 330–31, 545 A.2d 67. The plaintiff sued Montgomery County for negligence, but the circuit court granted the County's Motion to Dismiss the negligence counts. *Id.* at 332, 545 A.2d 67. In *Heffner,* we affirmed on the ground that running the courthouse was a "governmental" function and therefore the County was entitled to immunity from any tort actions arising from the operation of the courthouse. *Id.* at 335, 545 A.2d 67. We arrived at that holding, despite the fact that the plaintiff was injured in the front lobby of the building, which, quite obviously, was an area of "public travel."

In *Burns,* the City of Rockville was sued in negligence after Marcia Burns, a patron of the Rockville City Ballet, was injured when she was walking down the aisle of the theater where a ballet was to be performed. She fell after she misjudged the depth of one of the steps while walking to her seat. We held in *Burns* that the City of Rockville enjoyed governmental immunity because the City Ballet was "legisla-

tively authorized, was solely for public enjoyment and was not a profit making enterprise for the city, benefitted the public welfare and had no element of private interest." 71 Md.App. at 299, 525 A.2d 255.

What was said about the Rockville Ballet could also be said about the parking garage in this case where the subject accident occurred. To accept appellant's "public travel" argument, we would have to greatly expand the "street, sidewalk, footway" exception to the usual rule that a municipality is immune from suit if an accident occurs where the governmental operation in question "is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promotes the welfare of the whole public, and has in it no element of private interest. . . ." *Blueford,* 173 Md. at 267, 195 A. 571.

For the foregoing reasons, we hold that the circuit court did not err when it granted the County's motion for summary judgment.

**JUDGMENT AFFIRMED;**

**COSTS TO BE PAID BY APPELLANT.**