THE COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY *vs.* JAMES H. E. MITCHELL.

*Constitutional Law—Invalidity of Act Requiring Crier of Court to be Custodian of County Property.*

The court house of Prince George's County is occupied not only by the Circuit Court but by the County Commissioners and other county officers, and the building had been under the control of the Commissioners. The crier of the Circuit Court is appointed by the Judges under Constitution, Art. 4, sec. 9, which provides that the Judges may appoint such officers for their respective courts as may be necessary, and the crier is an officer of the Court recognized by statute. The Act of 1902. ch. 455, provides that the court house of Prince George's County shall be "under the care, custody and control of the crier of the Circuit Court for said county, who shall be at said court house daily to see that it is properly cared for."   *Held*, that the appointment of a custodian of county property is not a judicial function, but this statute indirectly imposes upon the Judges of the Circuit Court the duty of appointing such custodian and also interferes with the Court by requiring its officer to discharge other duties which may prevent him from properly performing the duties that belong to his office of crier, and that consequently the Act is void because in violation of the Bill of Rights, Art. 8, which declares that the legislative, executive and judicial powers of government ought to be forever separate and distinct from each other, and no person exercising the functions of one of said departments shall assume or discharge the duties of any other.

Appeal from the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*F. Snowden Hill*, for the appellant.

Prince George's County was created in 1695 (Act of 1695, ch. 13), and it has had, in succession, four "Court Houses," one at Mount Calvert, the first county seat, and three at Upper Marlboro, the present county seat. These so-called "Court Houses," have always housed the different branches of the county government, including the Courts, and have always been under the charge and control of the executive officers of the county who appointed the necessary custodian and attendants thereof. The Circuit Court for Prince George's County has always appointed its own officers such as bailiffs, messengers, crier, commissioners to take testimony, auditors, receivers and trustees, but never a custodian of either the building or the rooms therein occupied by it, or an attendant to clean the same. It is believed that this same custom has prevailed in the other counties of the State. The charge and control of the court house and grounds in Upper Marlboro belonged therefore, both by custom and nature to the executive branch of the government, was properly assumed by the appellants, and said Act confers upon a person exercising functions of the judicial department of the government—the crier of the Circuit Court—duties belonging to the executive department. "Executive duties are such as concern the execution of existing laws." *Peterson* v. *Mayor, etc.*, 17 N. Y. 449.

The Act of 1902 violates Art. 8 of the Bill of Rights. *Beasley* v. *Ridout*, 94 Md. 658. It makes the crier of the Court *eo nomine* custodian of the court house and grounds, and thereby *indirectly* required of the Judges of that Court the appointment of such custodian, for when they appointed said crier they of necessity appointed said custodian. *Robey* v. *County Commrs.*, 92 Md. 150. Now, manifestly, that cannot

be done indirectly which cannot be done directly. *People* v. *Albertson*, 55 N. Y. 57; *Warren* v. *People*, 2 Denio, 272, and if the contention made above, be sound, viz., that the duties of custodian of said court house and grounds belong to the executive department, then said act violates both Art. 33 and Art 8, *supra.* The duty of appointing others to office is a public office. *Bunn* v. *People*, 45 Ill. 397; *State* v. *Kennon*, 7 Ohio St. 546; *State* v. *Anderson*, 45 Ohio St. 196; *State* v. *Stanley*, 66 N. Car. 59; *State* v. *Tate*, 68 N. Car. 547.

The Act violates section 9 of Article 4, of the Constitution of Maryland which provides : ''The Judge or Judges of any Court may appoint such officers for their respective Courts as may be found necessary. * * * It shall be the duty of the General Assembly to prescribe by law a fixed compensation for all such officers.''

The office of custodian of the court house and grounds in Upper Marboro is one which is necessary or unnecessary for the Circuit Court, and in either event the Act of 1902 is unconstitutional ; for if necessary, the above section of the Constitution confers the power of appointment upon the Judges, and the Legislature had no right to name the crier of the Court ; and if unnecessary, the Legislature had no right to impose the custodianship of the court house and grounds upon the crier of the Court as such an officer of the judicial department, and such crier had no right to assume it. It would seem to be a plain proposition—stated in *Turner* v. *Althans*, 6 Neb. 54—that "the apportionment of power to one departmeut will, of itself, imply an inhibition of its exercise by the others,'' and an equally plain one—stated in *State* v. *Noble, et al.*, 118 Ind. 357—that "the Legislature cannot, for any purpose, cross the line which separates the departments and secures the independence of the judiciary. It is not the length of the step inside the sphere of the judiciary that summons the Courts to assert their constitutional right, and demands of them the performance of their sworn duty, for the slighnest encroachment is a wrong to be at once condemned and resisted. If the act does establish a Court, then its members

are Judges, they must, under the Constitution of Indiana, be
appointed by the Governor, and by no other power." (*Ib.,*
p. 366.)

The argument may be made that the Circuit Courts are
possessed of the common law power to appoint necessary at-
tendants charged with the care of its rooms and other like
functions. *Janitor of Supreme Court,* 35 Wis. 410; *State* v.
*Mounts,* 36 W. Va. 184—and to make necessary repairs to
the Court's offices—*White County* v. *Givens,* 136 Ind. 562—
but if this be law in Maryland, still the Act of 1902 would be
"a step inside the sphere of the judiciary" if limited to the
rooms and offices of the Circuit Court. It however, went much
further, and to the unwarranted length of the taking from the
appellant's possession of the whole municipal building and
conferring it upon the crier of the Circuit Court, and enjoining
the appellants from making any repairs upon said court house.
Besides, the appellee claims under the Act and not under a
special appointment of the Judges.    Said Act violates Art. 35
of said Bill of Rights which provides : "That no person shall
hold at the same time, more than one office of profit, created by
the Constitution or laws of this State."

The position of crier of the Circuit Court is a public office.
Not only is he an officer of the Court known to the common
law, but he is appointed by the Court, by virtue of section 9
of Article 4 of the Constitution; and is recognized by section
118, of Article 17, of the Public Local Laws, title, Prince
George's County.

That the crier of a Court is a public officer has also been
decided in the case of *Ricketts* v. *The Mayor, etc.,* 67 How. Pr.
(N. Y.) 321.    The duties of crier and custodian of the
court house and grounds are not congruous, and if said Act
of 1902, attempted to annex them, it would be void for this
reason, but said Act does no such thing for it creates the
office of custodian and confers it upon the crier of the
Circuit Court, *eo nomine.*    This is manifest from the lan-
guage: "Whose compensation shall be two hundred dollars
to be annually levied by the County Commissioners of Prince

George's County for the services in this behalf, in addition to the eighty dollars annually now paid said crier for his services as crier." It will be noticed, too, that said Act does not create a menial attendant or servant but a superintendent or custodian. This is manifest from the language: "The court house and grounds * * * are hereby placed under the care, custody and control of the crier of the Circuit Court of said county who shall be at said court house daily *to see* that it is propeely cared for." In this connection the language of the Court in the case of *Moser* v. *Mayor, etc.*, 21 Hun. (N. Y.) pp. 156-164, is pertinent. An attendant of the Marine Court of New York holds an "office within the meaning of that term. * *˙ Their duties, *e. g.*, the preservation of order and the care of juries, are public and well defined, and by no means menial. They have nothing to do with the cleaning or heating of the court house. Such functions are performed by subordinate employees of the city." See also, *Rowland* v. *Mayor*, 83 N. Y. 372.

"An office is a continuing charge or employment, the duties of which are defined by rules prescribed by law and not by contract, and the person who fills it is an officer." *Shelby* v. *Alcorn*, 36 Miss. 273. "The test of a public office is that it is a parcel of the administration of the government, civil or military, or is, itself, created directly by the law making power." *Eliason* v. *Coleman*, 86 N. Car. 235.

*Joseph S. Wilson*, for the appellee.

There has never been an officer in Prince George's County known as the keeper of the court house "created by the Constitution or laws of this State." The County Commissioners have heretofore simply appointed some one or more persons under the general provisions of sec. 1, Art. 25 of the Code to look after the court house with no salary or term of office fixed by law.

The crier of the Court exercises no *judicial functions*. He is not a part of the *judicial power* of the State. His duties and powers are not established by any statute. He is ap-

pointed under the general authority contained in sec. 9 of Art. 4 of the Constitution and there is nothing in the Constitution or laws of the State to prohibit the Legislature from imposing other obligations and duties upon him than those which are customary. It is true that the crier is appointed by the Court, but as stated by this Court in the case of the *Mayor and City Council of Baltimore* v. *State*, 15 Md. 457, in discussing this provision of the Declaration of Rights. "This Article is not to be interpreted as enjoining a complete separation between these several departments. Practically it has never been so in any of the States in whose fundamental law the principle has been asserted." The clerks of the Courts have many duties to perform which are in no way connected with the *judicial department of the government*, such as issuing licenses, recording deeds and other instruments, and in cases of vacancy are appointed by the judges. The Judges themselves, in cases of vacancies are appointed by the Governor who is the head of the *Executive Department* of the State.

In construing Acts of Assembly in the light of the Constitution every reasonable intendment must be made to enable both to stand. And the Act will not be held unconstitutional, unless it is in such plain conflict with some provision of the Constitution, as to leave no discretion to the Court in the premises. *County Commissioners, etc.*, v. *Meekins*, 50 Md. 28.

Boyd, J., delivered the opinion of the Court.

This is an appeal from a decree overruling a motion to dissolve an injunction, issued against the appellants at the instance of the appellee, and making the injunction perpetual. Chap. 455 of the Acts of 1902, provides "that the court house and grounds attached thereto of Upper Marlboro, Prince George's County, Maryland, be and the same are hereby placed under the care, custody and control of the crier of the Circuit Court for said county, who shall be at said court house daily to see that it is properly cared for" and allows him a compensation of $200.00 to be annually levied by the County Commission-

ers of that county in addition to the eighty dollars now paid him for his services as crier.    The appellee is the crier of the Court and the bill prays that the County Commissioners be enjoined and prohibited "from in any manner interfering with your orator in the discharge of the duties imposed upon him by the Act of Assembly herein mentioned, or from repairing or in any way exercising control over the court house and grounds attached thereto, in Upper Marlboro, Prince George's County, Maryland, and from refusing to give your orator free access to all portions of said court house necessary for him in exercise of his duties, as aforesaid, and from refusing to deliver to your orator any and all keys necessary for him to have, in order that he may fully do his duty as custodian of said court house and grounds."    The injunction was issued as prayed.

The appellants contend that the Court below erred, first, because the complaint of the appellee involves the title to a public office, which is not cognizable by a Court of equity, and, second, because the Act of Assembly is unconstitutional. The latter question being the more important one, we will proceed at once to the consideration of that.    No point was made at the argument about the language of the statute which refers to the "court house and grounds attached thereto *of Upper Marlboro,*" etc., but it seemed to be assumed that it referred to the court house of the county, and hence we will not stop to discuss that language.    Section 1 of Article seven of the Constitution, as amended, after providing for the election of County Commissioners in 1891, reads "their number in each county, their compensation, powers and duties, shall be such as now or may be hereafter prescribed by law; they shall be elected at such times, in such numbers and for such periods not exceeding six years, as may be prescribed by law."    Section 1 of Article 25 of the Code of Public General Laws provides that "The County Commissioners of each county in this State are declared to be a corporation, and shall have full power to appoint judges of election, road supervisors, collectors of taxes, trustees of the poor, a clerk to their board, and all other officers, agents and servants required for

county purposes, not otherwise provided for by law or by the Constitution, and they shall have charge of and control over the property owned by the county," etc.   Under the above section of the Constitution, there is no doubt that the Legislature may pass laws changing the powers and duties of the County Commissioners so long as such laws do not conflict with some other provision of the Constitution, and there have been many changes since the section of the Code just quoted was adopted.   They no longer appoint judges of election and in may of the counties some of the other officers named are otherwise selected.   It may therefore be conceded for the purposes of this case (although we do not so determine, it not being necessary) that the Legislature could commit a county building, such as a court house, to the "care, custody and control" of some one other than the County Commissioners, but the question is whether it can confer such powers and impose such duties on the crier of the Court as are attempted by this statute.   Since the decision in *Beasley* v. *Ridout*, 94 Md. 641, it could not be contended that a statute which provided for the appointment by the Circuit Court of some one to have the care, custody and control of the court house and grounds attached, would be valid.   The statute then under consideration provided for the appointment, by the Judges of the Fifth Judicial Circuit, of visitors to the jail in Anne Arundel County, and this Court held that the provision requiring such appointment was unconstitutional because in violation of the Declaration of Rights, Article 8, which declares that no person exercising the functions of the legislative, executive or judicial department of the government shall assume or discharge the duties of any other.   In speaking of that statute the Court said : "No argument is needed to show that the duty thus sought to be imposed is not judicial, and that in making these appointments the Judges were not performing a judicial function."   See also the recent case of *Board of Supervisors* v. *Todd et al.*, ante p. 247.   Those cases and others cited in them leave no room to doubt that the Judges of the Circuit Court could not properly be required or authorized to

appoint a person to discharge the duties contemplated by this statute, and the question is, can they be required or authorized to do indirectly what they cannot do directly?

The office of crier has always been deemed one of some importance in this State.    It is said in *Evans' Practice*, 33, that "The duty of the crier is to make proclamation, to assist in administering oaths, and generally to give facilities to the business of the Court during its actual session." He is usually required to be present during all the sittings of the Court, to formally announce the opening and adjournment of Court for the day or the term, as the case may be, by statute is required to give notice to the members of the bar of the time and place of drawing juries, and performs other important duties under the direction of the Judges.    Each county Court of the judicial system of Colonial Maryland had a crier, as did the Provincial Court, *Thomas' Chronicles of Colonial Maryland*, 121, 145.    As early as chapter 25 of the Laws of Maryland, 1779, his fees were regulated by statute, (*Dorsey's Laws of Maryland*, 152,) and although they were then payable in tobacco, most of the services for which the statute thus provided compensation are still enumerated in the Code of Public General Laws now in force, Art. 36, sec. 18.    In many of the counties his compensation is fixed by local laws, and in some of them he is required to perform duties that were not originally imposed on him, but so far as they have been brought to our attention, they have not attempted to go to the extent that the one under consideration has gone.    The present Constitution in sec. 9 of Art. 4, provides that "The Judge or Judges of any Court may appoint such officers for their respective Courts as may be found necessary ; * * * * It shall be the duty of the General Assembly to prescribe by law a fixed compensation for all such officers; and said Judge or Judges shall from time to time investigate the expenses, costs and charges of their respective Courts, with a view to a change or reduction thereof, and report the result of such investigation to the General Assembly for its action." Without that provision the Judges would undoubtedly have the

power to appoint such officers as are necessary for the proper conduct of the business of their respective Courts, but it shows that the subject was regarded by the framers of the Constitution as of considerable importance, as they inserted an entire section in reference to it. It was not intended that such an officer of the Court as a crier was to have "the care, custody and control" of the court house and grounds attached thereto. To impose such duties on him would necessarily require some of his time that the Court would be entitled to, as crier. In that way his usefulness as crier might be seriously interfered with. If he had simply been required to attend to the courtroom and other rooms connected with the Circuit Court, it would have been more in line with his other duties, but the record shows that this building is not only used by that Court but by the Orphans' Court, the County Commissioners and the treasurer, and in most, if not all, of the counties of this State, the court house is used by most of the county officers. The general law gives the County Commissioners "charge of and control over the property owned by the county" (sec. 1 of Art. 25); "they may sue for any injury done to the property of the county, or to recover possession thereof, or may be sued by any claimant of such property," (section 4), they are required to "provide for the support of the Courts  *  *  *  *  and pay and discharge all claims on or against the county which have been expressly or impliedly authorized by law," (sec. 7) but under the interpretation placed on this statute by the appellee and the Court below, they are prohibited "from *repairing*, or *in any way exercising control over the court house and grounds attached thereto."* With that injunction in force they could not insure the building or institute proceedings to eject a trespasser from the grounds, and cannot even have control of their own room, although the legal title to the property is vested in them. If the statute must be so construed, it would unquestionably be invalid, irrespective of the question whether it imposes non-judicial functions on the judges, and inasmuch as the injunction granted does contain such prohibitions the decree would have to be reversed for that reason.

But we are of the opinion that it is unconstitutional because it does require the Judges to discharge non-judicial functions—indirectly it is true, but just as objectionable as if directly done, and possibly more so.   The Judges alone have the power to appoint criers of their respective Courts.   If there was ever any question about that, the Constitution has settled it.   The Legislature cannot compel them thus indirectly to appoint the custodian of the court house and grounds, by providing that the crier shall be such custodian, nor can it interfere with the Court by requiring its officer to discharge other duties which may prevent him from properly performing the duties that belong to the office of crier.   A person may be well qualified to act as crier, but may be utterly unfit to be custodian of the court house and grounds, or one who may be competent to have the care, custody and control of that property might not be at all suited to the discharge of the duties of a crier.   Yet if this statute is to be enforced, whenever the Court is called upon to appoint a crier, it must select one who is qualified for both positions, which certainly could not always be done for such compensation as this statute fixes.

Without discussing the other grounds relied on by the appellants we must for the reasons given reverse the decree, but as the record does not disclose that the appellee was in anywise responsible for the passage of the statute, we think that the county should pay the costs.

*Decree reversed, and the bill of complaint dismissed, the appellants to pay the costs.*

(Decided June 29th, 1903.)