COUNTY COMMISSIONERS OF HARFORD COUNTY
*v.* ANNA M. LOVE

[No. 80, October Term, 1937.]

*Decided January 13th, 1938.*

The cause was argued before BOND, C. J., URNER,
OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Wilmer Cronin*, with whom were *A. Earl Shipley* and *Theodore F. Brown* on the brief, for the appellant.

*Charles Gilbert Cooley*, with whom were *A. Freeborn Brown* and *D. Eugene Walsh* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In the basement of the Harford County court house are lavatories to which there is public access, by a stairway, from the first floor of the building. At the bottom of the stairs there is a concrete platform, seven inches high, from which the plaintiff stumbled as she was on her way to the passage leading to the lavatories. The accident occurred because of her mistaken belief that upon reaching the platform she was on the floor level of the passageway. In this suit against the county to recover for the injuries resulting from her fall, it is alleged that the lower part of the stairway was negligently so constructed and inadequately lighted as to be unsafe for public use. While denying the charge of negligence, the county commissioners claimed immunity from the suit upon the ground that the maintenance of the court house is a governmental function. That defense, as first interposed by demurrer to the declaration, was overruled by the Circuit Court for Harford County. The case was subsequently removed to the Circuit Court for Carroll County, and at the trial in that court the same defense was urged by appropriate prayers, which were refused. The trial resulted in a verdict for the plaintiff, and from the ensuing judgment the defendants have appealed.

Since the rendition of the judgment below, this court has adjudicated another case upon a principle by which the decision of the question presented on this appeal must also be governed. In the recently decided case of *Baltimore v. State, use of Blueford*, 173 Md. 267, 195 A. 571, 576, the municipality was sued by the parents of an eleven year old girl who was drowned in a public swimming pool in one of the city's parks. It was alleged that the tragedy

occurred because of negligence on the part of the guards employed by the city to provide for the safety of bathers in the pool. On the appeal by the city from a judgment for the plaintiffs, it was determined that the maintenance of the public swimming pool was an exercise of a governmental function and that consequently the city was not liable for negligence of its employees at the pool in the performance of their duties. In the opinion of the court, delivered by Judge Offutt, the controlling principle was thus stated: "Where the act in question is sanctioned by legislative authority, is solely for the public benefit, with no profit or emolument inuring to the municipality, and tends to benefit the public health and promote the welfare of the whole public, and has in it no element of private interest, it is governmental in its nature."

It had been previously decided, in *Baltimore v. State, use of Ahrens*, 168 Md. 619, 179 A. 169, that as the city was exercising a governmental function in the maintenance of Gwynns Falls Park, it was not liable in damages for a death by drowning alleged to have resulted from an omission to erect signs warning the public of a dangerous condition to which the accident was attributed. The opinion in that case, by Judge Mitchell, quoted, at page 625 of 168 Md., 179 A. 169, 171, the following passage from the opinion, by Judge Parke, in *Baltimore v. Eagers*, 167 Md. 128, 135, 173 A. 56: "If the neglect or wrongful act was in the course of the performance of a purely governmental duty which had been imposed upon the municipality as a governmental or public agency by legislative enactment, there would be no liability in tort in favor of an individual who had been injured. This doctrine has general recognition, and various grounds have been assigned in its support, notably that, at common law, no civil action would lie against a municipal corporation for the neglect of a public duty imposed upon it as the agent of the public by a general law for the benefit of the public generally, and from the performance of which the municipal corporation would receive no profit or special advantage."

In *Gold v. Baltimore,* 137 Md. 335, 338, A. 588, it was held that the city, in maintaining schools, is performing a governmental duty, and therefore is not liable for personal injuries caused by the faulty construction or want of repair of a school building.

The conclusions of this court in the cases just referred to are in accord with the weight of judicial opinion in other jurisdictions, as reflected in *Dillon on Municipal Corporations* (5th Ed.) secs. 1650, 1643, 1657, 1658, and in *McQuillan on Municipal Corporations* (2nd Ed.) secs. 2844, 2846, 2813, and as expressed in numerous cases, including *Snider v. St. Paul,* 51 Minn. 466, 53 N. W. 763, 766; *Cunningham v. St. Louis,* 96 Mo. 53, 8 S. W. 787; *Schwalk's Admr. v. Louisville,* 135 Ky. 570, 122 S. W. 860; *Hill v. Boston,* 122 Mass. 344; *Kelley v. Boston,* 186 Mass. 165, 71 N. E. 299; *Wilcox v. Rochester,* 190 N. Y. 137, 82 N. E. 1119; *Hamilton County v. Mighels,* 7 Ohio St. 109; *Howard v. New Orleans,* 159 La. 443, 105 So. 443; *Boutet v. New York,* 199 App. Div. 835, 192 N. Y. S. 608; *Erpenbeck v. Covington,* 253 Ky. 233, 69 S. W. 2d. 338; *Eastman v. Meredith,* 36 N. H. 284; *Brown v. District of Columbia,* 29 App. D. C. 273.

The question before us on this appeal must accordingly be determined with due regard to the principle that public agencies of the state are exempt from actionable liability for alleged negligence in the exercise of the state's delegated authority for exclusively governmental purposes.

There is an exception to the application of that general rule in cases of injuries caused by a failure of municipal duty to keep highways and streets in safe condition for public travel. While the difficulty of assigning a logical reason for that exception has been conceded, its existence has long been definitely recognized. *Baltimore v. State, use of Blueford,* 173 Md. 267, 195 A. 554; and *Baltimore v. Eagers, supra; Baltimore v. Grossfeld,* 173 Md. 197, 195 A. 554; *Hagerstown v. Hertzler,* 167 Md. 518, 175 A. 447; *Anne Arundel County v. Vanskiver,* 166 Md. 481, 171 A. 705; *Baltimore v. Poe,* 161 Md. 334, 156 A. 888; *Wynkoop*

*v. Hagerstown*, 159 Md. 194, 150 A. 447; *Baltimore County v. Collins*, 158 Md. 335, 148 A. 242; *Caroline County v. Beulah*, 153 Md. 221, 138 A. 25; *Kent County v. Pardee*, 151 Md. 68, 134 A. 33; *Anne Arundel County v. Duckett*, 20 Md. 468; *Baltimore v. Marriott*, 9 Md. 160.

By virtue of provisions of the Code of Public General Laws of Maryland, the county commissioners of each county are a corporation, and "have charge of and control over the property owned by the county," article 25, sec. 1, as amended by Acts 1929, ch. 354; and they "may sue and be sued, and may sue for any injury done to the property of the county, or to recover possession thereof, or may be sued by any claimant of such property," *Id.* sec. 5; and they "shall levy all needful taxes, * * * provide for the support of the courts, * * * and discharge all claims on or against the county which have been expressly or impliedly authorized by law," *Id.* sec. 8. There is no express or implied statutory duty imposed upon county commissioners to pay such a claim as the one asserted in this suit.

The maintenance of a court house is a distinctive function of government. It is requisite for the convenient administration of public justice. The buildings devoted to that primary purpose in the counties are also customarily used by the county commissioners in the performance of their functions as the governing body of the county, and by other officials who are engaged in rendering essential public services. The judicial and administrative purposes to which such buildings are devoted necessarily impress them with a governmental character.

In 43 *C. J.* p. 1166, it is said: "A municipal corporation is not liable for negligence in the construction and maintenance of buildings or apparatus used solely for governmental purposes; and this rule applies to a court house and its appurtenances * * * to a city or town hall, and to other public buildings, such as school houses, police or fire stations, prisons, jails, or workhouses, and hospitals or pesthouses."

The following quotation is from 19 *R. C. L.* p. 1123:

"The erection and maintenance of a building to be used as a place for the meetings of the voters of a town, or of the council or other legislative body of a city, and to house the officers of the various boards and departments of the municipality, is a purely public or governmental function, and a municipal corporation cannot be held liable for injuries resulting from the defective condition of such a building. * * *"

In 6 *McQuillan on Municipal Corporations*, (2nd Ed.) sec. 2846, it is said to be "generally held that if the municipal building is used exclusively for a public purpose, the municipality is not liable for injuries resulting from defects therein or other negligence connected therewith. For instance, it is held in most jurisdictions that there is no municipal liability where the negligence is in connection with a prison or jail, a city court house or city hall. The same is true of school buildings."

Those statements are supported in principle by many decisions. There are citations of such cases in *Ann. Cas.* 1918D, 115; 25 *L. R. A. N. S.*, 88; 64 *A. L. R.* 1545; 108 *Am. St. Rep.* 173, and *Dillon on Municipal Corporations* (5th Ed.) sec. 1657; and the immunity of municipal corporations from liability for injuries caused by defective conditions in public buildings used as hospitals, pest-houses, or alms houses is the subject of a note in *Ann. Cas.* 1918D, 803.

The plaintiff's injury having been received in her use of accommodations, gratuitously provided for the public convenience, in the building maintained by Harford County for governmental purposes as a court house, our conclusion is that there can be no recovery in this suit, and that the reversal of the judgment must be without the award of a new trial.

*Judgment reversed, with costs.*