## CARROLL COX *v.* BOARD OF COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY

[No. 55, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, and ADAMS, JJ.

*James Morfit Mullen* for the appellant.

*Benjamin Michaelson* for the appellees.

MARBURY, J., delivered the opinion of the Court.

This is a suit against the County Commissioners of Anne Arundel County for damages resulting to the infant plaintiff from being attacked and bitten by a ferocious pack of dogs running at large in the third election district of the county. The dogs were owned by a resident of the county. The owner had a kennel license under the local law, by the terms of which the dogs were permitted to be at large only under close supervision at certain times. The attack is alleged to have occurred while the plaintiff was lawfully upon a highway in the neighborhood of the residence of the owner. A general demurrer was sustained below. The plaintiff declined to amend, and judgment was extended in favor of the defendant for costs. From this judgment, the appeal comes here.

The first count of the declaration is based upon the breach of special duties alleged to have been placed upon the appellee by the local dog law enacted by Chapter 255 of the Acts of 1937 and amended in some particulars by Chapter 283 of the Acts of 1941. The second count is based upon the negligence of the appellee in its failure to abate the nuisance caused by this pack of dogs running at large. It is claimed in this count that such duty is placed upon the appellee under the provisions of the general and local laws. If there is such duty, it must be found in the statutes. The liability of the appellee

under both counts, therefore, is narrowed to what was intended by the Anne Arundel County dog law.

Governments are immune from suit by individual citizens, unless the right is expressly given. The reason for this immunity is stated by Mr. Justice Holmes in the case of *Kawananakoa v. Polyblank,* 205 U. S. 349, 51 *L. Ed.* 834: "Some doubts have been expressed as to the source of the immunity of a sovereign power from suit without its own permission, but the answer has been public property since before the days of Hobbes. Leviathan, Chap. 26, 2. A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." When the State gives a city or county part of its police power to exercise, the city or county to that extent is the State.

It is difficult to find a good reason for holding that a municipality (using the word in its broad sense) is not exercising the police power for the safety of the public when it is maintaining public highways. However, the rule in this State and in other jurisdictions is that, in such case, the municipality is acting in its corporate capacity, and is liable to suit for its negligence. In discussing this question this court in the case of *Mayor and City Council of Baltimore v. State,* 173 Md. 267, 273, 195 A. 571, 574, said: "But the two principles, one that a municipal corporation is not liable in a civil action for any default or neglect in the performance of a purely governmental function, and the exception, that it is liable for failure to keep the public highways under its management and control in a reasonably safe condition, are too firmly embedded in our law to be disturbed now."

It is equally well settled that the highway for which the municipality becomes liable on account of its failure to keep it in repair must be one that has been created or accepted by the public authorities, and that the liability does not extend to a highway not accepted, but which

has merely been dedicated to public use by a private owner, or one which such owner has permitted the public to use. It must actually have been accepted by the public authorities either expressedly or impliedly. This court in the case of *Kennedy v. Cumberland,* 65 Md. 514, 9 A. 234, 57 *Am. Rep.* 346, adopted the statement of the law on that subject in 2 *Dillon, Municipal Corporations,* Sec. 642, which is as follows: "As against the proprietor, a dedication of land for streets and highway may be complete without any act or acceptance on the part of the public; but, in order to charge the muninipality or local district with the duty to repair, or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an acceptance of the dedication, and this acceptance must be by the proper or authorized local public authorities. It may be express, and appear of record, or it may be implied from repairs made and ordered, or knowingly paid for, by the authority which has the legal power to adopt the street or highway, or from long user by the public."

This question becomes important in view of the allegation in both counts of the declaration that the attack on the appellant occurred on a highway and the absence of the accompanying adjective "public." It may be presumed that the appellant has stated his case as strongly as he can. In view of the absence of the word "public," it must be assumed that the highway where the attack occurred was not one which had been created or accepted either expressedly or impliedly by the appellee. Statements to that effect were made at the argument of the case by counsel of the appellee. While these were not admitted by counsel for the appellant, the latter did state that he was unable to say that he could prove the attack occurred on a public highway. In the absence of a definite admission we must look to the record. We do not find in it any statement that this attack took place on a public highway of Anne Arundel County. We, therefore, consider it as if it did not so take place, but

occurred on a road which it is not alleged the appellee has any duty to keep free of obstruction.

A number of cases cited to us by the appellant furnish no precedent for this case, because they refer to negligence with respect to a public highway. Such cases are *Mayor, Etc., of Baltimore v. Marriott,* 9 Md. 160, 66 Am. Dec. 326; *Anne Arundel County Com'rs v. Ducett,* 20 Md. 468, *Am. Dec.* 557; *Cochrane v. Frostburg,* 81 Md. 54, 31 A. 703; *Hagerstown v. Crowl,* 128 Md. 556, 97 A. 544; *Taylor v. Cumberland,* 64 Md. 68, 20 A. 1027; *Hagerstown v. Klotz,* 93 Md. 437, 49 A. 836; *Havre de Grace v. Fletcher,* 112 Md. 562, 77 A. 114; and *Mayor and City Council of Baltimore v. Eagers,* 167 Md. 128, 173 A. 56.

The case then turns upon the question whether the statute imposed upon the appellee duties which are governmental by nature or whether its duties are those known as corporate or proprietary. If the appellee is exercising a governmental function, it is not liable. If it is acting under corporate or proprietary powers, it may under some conditions be held responsible. The distinction is, at times, illusory in practice, and not altogether logical in all cases. *McQuillen on Municipal Corporations,* 2nd Ed., Vol. 6, pars. 2795-2798. There is a modern tendency to broaden the liability. In this State, however, the distinction has been adhered to too long for it now to be judicially altered. That can be done only by statute by which it may be abolished altogether, or by which some method of compensation may be provided. The rule has already been relaxed as to employees. Code, 1939, Art. 101, Sec. 46.

County commissioners are outgrowths of the old levy courts originally established by the Act of 1794, Chap. 53. These courts were composed of the justices of the peace of the several counties. Their duties were to meet and to adjust the ordinary and necessary expenses of their counties, and to impose an assessment or rate on property to defray county charges. During the course

of the succeeding fifty years the name "County Commissioners" came into existence. It was first recognized in the underlying law of the State in the Constitution of 1851, Art. 7, Sec. 8. In that Constitution it was provided that the commissioners should exercise only such powers and duties as the Legislature should from time to time prescribe. When the present Constitution of 1867 was adopted, Article VII, Section I, provided that the power and duties of county commissioners should be such "as now or may be hereafter prescribed by law." Until the Constitution of 1867, county commissioners were simply administrative officers in charge of county finances, and taking care of the public roads. *Board of Commissioners of Public Schools v. Allegany County Commissioners*, 20 Md. 449. After the Constitution of 1867 these powers could be broadened by legislative authority. *Talbot County Com'rs v. Queen Anne's County Com'rs*, 50 Md. 245; *Prince George's County Com'rs v. Mitchell*, 97 Md. 330, 55 A. 673.

In the case of *Gordon v. Montgomery County*, 164 Md. 210, 164 A. 676, an Act was held valid authorizing county commissioners to pass rules, regulations and ordinances, licensing and regulating graveyards in the exercise of the police power. It is clear now, therefore, that police power with respect to the public health or the public safety can be validly imposed on county commissioners by the Legislature. When that is done it follows that such commissioners are, to the extent of such grant, invested with the sovereign power of the State. Acting under such power, they act in a governmental capacity under the decisions.

There are numerous cases in this court in which it has been decided that the county or the city is acting in a governmental capacity and, therefore, is not liable to suit for damages. Such cases are those of claims for damages suffered as a result of a revocation of a permit authorizing the carrying on of the public business of removing refuse (*Boehm v. Baltimore*, 61 Md.

259), from failure to enforce an ordinance forbidding the discharge of firearms within the city (*Wynkoop v. Hagerstown,* 159 Md. 194, 150 A. 447), from failure to warn the public of the dangerous character of a stream by reason of which a boy was drowned (*Mayor and City Council of Baltimore v. State, Use of Ahrens,* 168 Md. 619, 179 A. 169), from failure to prevent a child from drowning in a public swimming pool (*Mayor and City Council of Baltimore v. State, to Use of Blueford,* 173 Md. 267, 195 A. 571), from injuries incurred by falling in the county court house (*County Commissioners v. Love,* 173 Md. 429, 196 A. 122).

The appellant claims that these and similar cases are not applicable. His theory is that this case, whether it occurred on a public highway or a private road, is of the type of two cases, one in this court and one in the United States Circuit Court of Appeals for the Fourth Circuit, in both of which a public body was held liable. In one of these the town of Havre de Grace was sued because in the course of building a yacht basin, it had the dredged material put in shallow water where it escaped and destroyed the shore line of the plaintiff's property. This court, in that case, said that in doing this work the municipal corporation had negligently inflicted a wrong for which it could not claim governmental immunity. *Mayor and City Council of Havre de Grace v. Maxa,* 177 Md. 168, 9 A. 2d 235. In so deciding, the court followed the earlier case of *Mayor, Etc., of City of Baltimore v. Merryman,* 86 Md. 584, 39 A. 98, and the later case of *Livzey v. Bel Air,* 174 Md. 568, 199 A. 838, as well as some other nuisance cases cited in the opinion. All of them related to work which public authorities were doing, and which was done negligently. They bear no resemblance to the case before us. The principles underlying these decisions are fully reviewed in the opinion of Chief Judge Boyd in the case of *Taylor v. Baltimore,* 130 Md. 133, 99 A. 900.

The other case relied on by the appellant is an opinion by District Judge Waddill sitting in the United States Circuit Court of Appeals for the Fourth Circuit. In that case he held that the City of Baltimore was liable for not properly supervising the construction of a bulkhead, whereby certain piers were left concealed in the water, and boys going over them in a launch were drowned. The court held that under the Maryland law of nuisance, the city was liable, but in support of its opinion it cited the Maryland highway cases. *State, to Use of Pryor v. Miller,* 194 F. 775: In this same case when heard below, in the District Court of the United States for the District of Maryland, Judge John C. Rose, who was a distinguished Maryland lawyer before he became a federal judge, reviewed the Maryland cases in which it was held that municipalities and counties were liable for damages occurring on the highways and said: "The language in which the principle is stated, it is true, is broad enough to render the city liable for things other than those which affect the use of its streets; but I do not find in any of the authorities cited, or with which I am familiar, that in point of fact this liability for the simple non-use of powers given to it has in point of fact ever been extended beyond the class of cases above mentioned." *State, to Use of Pryor v. Miller,* D. C., 180 F. 796, 809. Neither of these decisions of the federal courts, construing Maryland law, is authoritative here, but the opinion of Judge Rose more correctly stated the substance of our decisions. *Mayor and City Council of Baltimore v. State,* 168 Md. 619, 179 A. 169, 99 *A. L. R.* 680; *County Commissioners v. Love,* 173 Md. 429, 196 A. 122.

The case before us is a typical case of non-use of power. The Anne Arundel County Dog Law is a regulatory Act. *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 24 A. 2d 911. The license fees are incidental. They are used in the administration of the Act and for the payment of damages caused by dogs to personal property.

Damage to property can be paid out of a claims fund, which is the only fund retained by the county, except a pound fund, the latter to provide a shelter or pound for stray dogs and others taken up for running at large without a license. Any balance in the claims fund goes to this pound fund. Damage to persons and property can also be recovered from the owner of the dogs. The owner of livestock or poultry damaged must elect, either to proceed against the claims fund, or against the owner, and cannot have both remedies. There is no provision in the Act whatever for the payment by the county of any money for damage done to a person. The Act contains many methods for its enforcement by peace officers or wardens or by individuals who make complaints. It provides for fines for those failing to observe its provisions. The appellee is authorized to make rules, regulations and provisions "not inconsistent with the" Act for "the convenient and effective enforcement" of the Act. From all of this it appears that the appellee is given police power under the Act to control dogs within the county as a measure of public safety, and, perhaps, also with some reference to public health. This is a governmental function as determined by our decisions. The non-use of the powers thus given does not render the appellee liable in damages. This conclusion is supported by the general authority as found in 2 *Am Jur., Title Animals,* Par. 141, p. 802: "Attempts have also been made to hold a municipality liable generally for injuries inflicted by an animal running at large because of failure either to pass or to enforce ordinances prohibiting such roaming. In such cases the general rule appears to be that while the construction and maintenance of a street in a reasonably safe condition for travel is a corporate duty for a breach of which an action will lie, making and enforcing ordinances regulating the use of streets brings into exercise governmental and not corporate powers, and for any act or omission of duty in that respect, there is no liability in the absence of a statute imposing

one. It has, however, been stated that an exception exists with reference to maintaining public streets and ways in a condition of safety for public travel, and that a city is liable for negligence in discharging this duty, it being imposed directly upon the city and being ministerial in character." See *Everly v. Adams*, 95 Kan. 305, 147 P. 1134, *L. R. A.* 1915E, 448, and note; *Little v. City of Madison*, 49 Wis. 605, 6 N. W. 249, 35 *Am. Rep.* 793, and cases there cited.

Nor do we find any special provisions in the Act which impose any responsibility done to persons by dogs running at large. The damage to property can be paid out of the claims fund, after certain prerequisites are gone through with, and after the appellee passes upon the amount. There is no other fund provided. The designation of this fund for this purpose negatives the idea that the appellee has any authority to pay for such damage in any other way. If the person whose property is damaged is not satisfied to adopt this method, he can sue the owner of the dog. It is noteworthy that in the section providing for owner's liability, there is included damage to the body as well as damage to the property, whereas damage to the body is not included in the provisions relating to the liability of the county. This is an indication of the intention of the Legislature that the only county fund to be used for the purpose of paying claims for damage done by dogs is the claims fund. Payment out of this fund is restricted to damage done to livestock and poultry. For damage to the person, the injured party is given his remedy against the owner of the dog. The Act instead of authorizing such a suit as the one before us, by necessary implication, prohibits it.

For the reasons above given the judgment of the Circuit Court for Anne Arundel County will be affirmed.

*Judgment affirmed, with costs.*